UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEY MEETINGS, INC.,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

Case No.  25-cv-06520-WHO

**ORDER GRANTING MOTION TO DISMISS COUNT THREE**

Re: Dkt. Nos. 36

Plaintiff Key Meetings, Inc. ("Key Meetings") brings this lawsuit against the United States (the "government") alleging an entitlement to the Employee Retention Credit ("ERC") for the first through third quarters of 2021.  The government moves to dismiss in part, arguing that Key Meetings' ERC claim for the third quarter of 2021 ("third quarter") is statutorily barred under Section 70605(d) of the One Big Beautiful Bill Act ("Section 70605(d)"), that established a new and retroactive deadline for ERC requests of January 31, 2024.  Key Meetings contends that Section 70605(d) violates the Due Process Clause as a retroactive tax that is not rationally related to a legitimate legislative purpose.  But as another court recently concluded,[1] I find that Section 70605(d)'s retroactive application does not violate the Due Process Clause and it bars Key Meetings' claim for the third quarter.  The government's motion to dismiss Count 3 of the Amended Complaint is GRANTED.

## BACKGROUND

Key Meetings is a corporate event planning company located in San Francisco, California.

---

[1] *Juggler Dave & Friends, LLC v. United States*, 181 Fed. Cl. 52 (Fed. Cl. Mar. 25, 2026).

First Amended Complaint ("FAC") [Dkt. No. 33] ¶¶ 1-2. On or about August 28, 2024, Key Meetings filed IRS Form 941-X seeking the ERC tax credit for the first, second, and third quarters of 2021. *Id.* ¶¶ 6-7. At the time, Key Meetings was eligible for the ERC for all three quarters and within the statute of limitations for filing the claim. *Id.* ¶¶ 48.

On July 4, 2025, Congress enacted the One Big Beautiful Bill Act ("OBBBA"), and Section 70605(d) set a retroactive deadline for all third quarter of 2021 ERC claims of January 31, 2024. *Id.* ¶¶50-51. Key Meetings filed this case on August 1, 2025, seeking recovery of the ERC tax credit in the amount of $175,000 for all three quarters: a refund of $63,000.00 for the first quarter ("Count One"), $56,000 for the second quarter ("Count Two"), and $56,000 for the third quarter ("Count Three"). FAC ¶¶ 93, 102, 112. It asserts that its claim for the third quarter cannot be rejected under Section 70605(d) because that section violates the Due Process Clause. *See id.* ¶¶ 53, 111.

The government moves to dismiss only Count Three, which seeks the third quarter 2021 refund because that claim is barred by Section 70605(d). *See* Partial Motion to Dismiss ("Mot.") [Dkt. No. 36]. Key Meetings opposes, arguing that Section 70605(d) is unconstitutional. *See* Opposition to Partial Motion to Dismiss ("Oppo.") [Dkt. No. 38].

## LEGAL STANDARD

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

2

United States District Court
Northern District of California

plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

Section 70605(d) provides:

> Notwithstanding section 6511 of the Internal Revenue Code of 1986, no credit under section 3134 of the Internal Revenue Code of 1986 shall be allowed, and no refund with respect to any such credit shall be made, after the date of the enactment of this Act, unless a claim for such credit or refund was filed by the taxpayer on or before January 31, 2024.

Pub. L. 119-21, § 70605(d), 139 Stat. 72 (2025).  If this retroactive provision is constitutional, Key Meetings' refund filing on August 28, 2024, was too late and the claim for the third quarter must be dismissed.[2]

The Supreme Court has explained that due process requires that all retroactive economic legislation, including taxes, (i) have a legitimate legislative purpose and (ii) further that purpose by rational means.  *United States v. Carlton,* 512 U.S. 26, 30-31 (1994).  In other words, "[r]etrospective economic legislation need only survive rational basis review in order to pass constitutional muster." *Gadda v. State Bar of Cal.*, 511 F.3d 933, 938 (9th Cir. 2007).  While legislation with retroactive impact faces an additional due process barrier compared to conventional forward-looking measures, "…that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984) (citation omitted).

The Ninth Circuit uses a "deferential" standard to evaluate due process challenges to retroactive tax legislation, asking "whether [the] retroactive application itself serves a legitimate purpose by rational means." *Moore v. United States*, 36 F.4th 930, 938 (9th Cir. 2022).  No

---

[2] There is no dispute that the OBBBA did not impact the requests for refund for the first two quarters of 2021.

evidence about the legislature's actual intent is required for a statute to pass rational basis scrutiny, only that the legislature "could have concluded rationally" that the facts warranted a statutory response. *Williamson v. Lee Optical*, 348 U.S. 483, 487-88 (1955); *Vance v. Bradley*, 440 U.S. 93, 111 (1979).

The government argues that the rational basis test is readily satisfied because Section 70605(d) is intended to combat the increase in fraudulent ERC claims beginning in 2024. The United States also points to legislative history, including statements by Congresspeople and IRS findings, showing that ERC claims filed after January 31, 2024, had a higher rate of fraud. Key Meetings responds that the constitutionality of Section 70605(d) cannot or should not be determined at the motion to dismiss stage based on legislative history, but even if considered on the merits, Section 70605(d) fails rational basis review and its third quarter claim should survive.

## I.      RESOLUTION ON MOTION TO DISMISS

Key Meeting argues that the court should deny the Motion to Dismiss because Rule 12(b)(6) "does not permit the Court to resolve constitutional balancing questions or to accept Defendant's characterization of legislative purpose as a matter of law." Oppo. at 7. Numerous courts have resolved Due Process Clause challenges at the 12(b)(6) stage, however. *See, e.g.*, *Juggler Dave*, 181 Fed. Cl. at 61 ("The retroactive application of this section adheres to the due process standard for retroactive tax statutes . . . The motion to dismiss under RCFC 12(b)(6) is granted."); *Moore v. United States*, 2020 WL 6799022, at \*6 (W.D. Wash. Nov. 19, 2020), *aff'd,* 36 F.4th 930 (9th Cir. 2022), *aff'd,* 602 U.S. 572 (2024) ("the MRT does not violate due process and, as a tax on income, it is constitutionally valid … For the foregoing reasons, the Government's motion to dismiss [under Rule 12(b)(6)] is granted.") (citation modified); *Quarty v. United States*, 1997 WL 1038148, at \*6 (D. Ariz. Sept. 9, 1997), *aff'd*, 170 F.3d 961 (9th Cir. 1999) ("given the legitimate purposes of Congress . . . [p]laintiffs' takings claim is without merit as a matter of law. The Court will, therefore, dismiss this claim [under] Rule 12(b)(6) as well.").

Key Meeting alternatively argues that the factual allegations in the Complaint, if accepted as true, state a plausible claim for relief. It alleges that the time limit imposed by the OBBBA that excludes its third quarter refund claim is arbitrary and "bears no rational relation to the prevention

of fraud." Oppo. at 12-13; *Iqbal*, 556 U.S. at 678-79. That is not a factual allegation, it is a legal conclusion. *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) ("While we do accept all of the *factual* allegations in the complaint as true . . . we do not accept *legal conclusions* in the complaint as true, even if 'cast in the form of factual allegations.'") (citation omitted). Key Meetings' bare legal assertions of arbitrariness do not prevent me from determining whether Congress had a rational basis for imposing a retroactive cutoff for refund claims in Section 70605(d).

## II.     JUDICIAL NOTICE OF LEGISLATIVE HISTORY

In support of its argument that Section 70605(d) is a plausible and rational legislative action, the government cites several legislative sources, including a congressional release, a congressional report, and press releases from the IRS and a United States Senator. *See* Mot. at 8-10. Key Meetings contends that the government impermissibly relies on material outside the pleadings to establish adjudicative facts and asserts the facts contained in those documents are not "judicially noticeable." Oppo. at 14-15. Neither assertion is correct. As the Supreme Court recognized in *U.S. R.R. Ret. Bd. v. Fritz*, it is "constitutionally irrelevant" whether the plausible reasons identified for a statute are Congress's actual reasons, especially where the statute draws lines. 449 U.S. 166, 179 (1980). Here, the government is not required to establish the true rate of fraudulent ERC claims or that Congress drew the deadline perfectly if it can identify a plausible reason for Congress to have done so. Its argument does not rely on the legislative history documents to establish adjudicative facts but to suggest plausible legislative purposes underlying Section 70605(d).

The legislative history sources identified by the government are judicially noticeable to establish that plausible legislative purpose. I may consider all material subject to judicial notice in 12(b)(6) motions, which includes "public records and government documents." *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Chavez v. Allstate Northbrook Indem. Co.*, 2025 WL 1757543, at *4 (S.D. Cal. June 25, 2025); *see also Juggler Dave & Friends, LLC v. United States*, 181 Fed. Cl. 52 (Fed. Cl. Mar. 25, 2026) (considering the same legislative history sources in finding Section 70605(d) satisfies rational basis review).

### III. RATIONAL BASIS REVIEW

Turning to the merits of the parties' arguments, Key Meetings contends that Section 70605(d) "does not bear a rational connection to" the legitimate legislative purpose of combating fraud because the chosen cutoff date is arbitrary and excludes otherwise valid claims filed after that date. Oppo. at 15-16. Key Meetings also identifies other statutory mechanisms that in its view adequately address potentially fraudulent claims and thereby undercuts the necessity or rationality of Section 70605(d). *Id.* at 17-18.

The resolution here is controlled by the Supreme Court's decision in *United States v. Carlton,* 512 U.S. 26 (1994). There, the Court held that a retroactive bar on estate tax deductions did not violate due process. *Id.* at 35. It considered whether there was a due process violation when Congress had implemented an estate tax deduction for an estate's sale of employer stock ownership plans and then later retroactively restricted the deduction to only stock ownership plans directly owned by the decedent before death. *Id.* at 28-29. The Supreme Court concluded that the retroactive legislation was rationally related to the legitimate legislative purpose of closing a loophole in the original tax deduction legislation that allowed for "sham transactions." *Id.* at 31-32.

The government asserts that, as in *Carlton*, Section 70605(d) rationally relates to the legitimate legislative purpose of preventing fraudulent ERC claims that were allowed under the earlier ERC statute. Mot. at 12-13. Key Meetings attempts to distinguish *Carlton* by claiming that there the government attempted to cure a drafting error, unlike here with Section 70605(d) where there was no such error. Instead, here the government made a "deliberate policy choice" to abandon the government's prior obligations to administer the tax credit. Oppo. at 20.

This argument fails. Key Meetings does not dispute that Congress had a legitimate legislative interest in addressing the increase in fraudulent ERC claims that started in 2023. Oppo. at 15; *see also* Mot. at 12-13. Section 70605(d)'s January 31, 2024, cutoff date for new ERC claims is a plausible and rational response to that concern because it bars claims Congress believed were more likely to be fraudulent than others. *See* H.R. Rep. 118-353, pt 1, at 94 (2024) ("[D]isallowing new and amended claims for refund or credit of the ERTC after the end of January

6

2024, serves to limit waste, fraud, and abuse in the tax system."); Press Release, I.R.S., IR-2023-169 (Sept. 14, 2023) ("rising concerns about a flood of improper Employee Retention Credit claims . . . "); *see also Juggler Dave*, 181 Fed. Cl. at 58-59 (finding rational basis for Section 70605(d) based on Congressional and IRS statements about ERC fraud risk). As this rate of fraud was not anticipated by the original ERC statute, Congress acted to "cure" the newly revealed flaw in that statute by restricting ERC eligibility retroactively. *See Carlton*, 512 U.S. at 32.

Key Meetings points to other provisions of the OBBBA which, in its view, more rationally and effectively address ERC fraud, including extending the period during which the IRS can review ERC claims for fraud and increasing the penalties against fraudulent "COVID-ERTC promoter[s]" who many believe created the majority of identified ERC fraud. Oppo. at 17-18. The Constitution does not require legislators to implement only the most efficient or effective solutions to identified problems, only rational ones. *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 685 (2012). While Key Meetings argues that the alternative provisions might be more "narrowly tailored" to target fraud and thus more rational than Section 70605(d)'s blanket bar, Section 70605(d) remains a rational and permissible measure addressing ERC fraud concerns. *See id.*

In *Juggler Dave & Friends, LLC v. United States*, the Court of Federal Claims considered and rejected similar due process arguments against Section 70605(d). *Juggler Dave,* 181 Fed. Cl. at 61. The court first concluded that Section 70605(d) did not impose a retroactive "wholly new tax," which would face higher due process scrutiny, because the time bar only altered the eligibility criteria for the existing ERC claims. *Id.* at *4-5. The court then determined that Section 70605(d) fulfills a legitimate and rational legislative purpose in combating fraud and abuse in the ERC system and is "curative and remedial in nature" because it eliminates a fraud-prone credit that is no longer justified following the end of the pandemic. *Id.* at *5. Finally, the court rejected the plaintiff's arguments that Section 70605(d) is insufficiently tailored to address ERC fraud since the statute must only be a "rational means" to do so, not narrowly tailored as under a higher level of scrutiny. *Id.* at *6. I find this analysis persuasive; Key Meetings did not

United States District Court
Northern District of California

address it.[3]

## IV.    REASONABLE RELIANCE

Key Meetings also argues that it reasonably relied upon the then-current ERC filing deadline when it submitted its third quarter ERC claim on August 28, 2024. Oppo. at 21. Key Meetings contends it was harmed by this reliance by retaining staff it would have laid off without its ERC eligibility. *Id.* While Section 70605(d)'s retroactive bar prevented the claim for quarter three of 2021 filed in 2024, Key Meetings could have claimed that credit on its initial 2021 tax return or at any time between 2021 and 2024. Mot. at 16. Key Meetings' delay in filing for the credit eliminated any reliance interest Key Meetings might have held in its ERC credit. *See Juggler Dave*, 181 Fed. Cl. at 60 (holding that plaintiff had no reliance interest in ERC credit after waiting two years to file); *Honeywell, Inc. v. United States*, 973 F.2d 638, 643 (8th Cir. 1992) (by waiting to claim tax credits for hiring employees, Honeywell assumed the risk of losing those credits due to a change in law). Even if Key Meetings had a reliance interest in the pre-Section 70605(d) deadline, "reliance alone is insufficient to establish a constitutional violation." *Carlton*, 512 U.S. at 33.

## V.    EXCESSIVE RETROACTIVITY

Finally, Key Meetings argues that the Section 70605(d)'s 16-month retroactive period is excessive and "severe" due to its complete bar on previously valid claims. Oppo. at 22. In evaluating retroactive taxes, "length of the period retroactively affected [is] merely as a factor… in the overall assessment of the constitutionality of the legislation." *Licari v. Comm'r*, 946 F.2d 690, 695 (9th Cir. 1991) (quoting *Canisius Coll. v. United States*, 799 F.2d 18, 27 (2d Cir. 1986)).

---

[3] Key Meetings raised a new argument during the hearing on this motion. It attempted to distinguish Section 70605(d) from *Carlton* and other cases where retroactive tax statutes were upheld under rational basis review because Section 70605(d) imposed a purely procedural change in deadlines, whereas the other cases all addressed substantive changes to tax eligibility. As an initial matter, this argument is waived because it was not raised in Key Meetings' motion or reply. *Stockton v. Brown*, 152 F.4th 1124, 1143 (9th Cir. 2025). Even if it had been properly raised, it fails. Carlton and the other cases applying rational basis review to retroactive tax statutes did not themselves draw a distinction between substantive retroactive changes and procedural changes. And other courts have applied the same rational basis review to "purely" procedural changes. *See Juggler Dave*, 181 Fed. Cl. at 57; *Valero Mktg. & Supply Co. v. United States*, No. 5:19-CV-328, 2020 WL 10052851, at *3 (W.D. Tex. July 31, 2020) (upholding a purely "procedural" change, imposing a retroactive deadline on biofuel tax credits without altering other eligibility criteria.)

Section 70605(d)'s 16-month retroactivity period is not an outlier; courts have upheld similarly long and longer retroactive periods for other tax provisions. *See, e.g.*, *Carlton,* 512 U.S. at 32 (a 14-month retroactive tax); *Licari*, 946 F.2d at 693-95 (a 4-year retroactivity period for increased penalty rates on underreported taxes). *Juggler Dave* reached the same conclusion regarding Section 70605(d)'s retroactive deadline, noting "there is no fixed limit on retroactivity." *Juggler Dave*, 181 Fed. Cl. at 59. Section 70605(d)'s retroactivity period is not excessive and does not violate due process.

## CONCLUSION

Section 70605(d)'s retroactive bar on ERC claims rationally implements the legitimate legislative purpose of combating fraud and does not violate the Due Process Clause. Key Meetings submitted its third quarter ERC claim after the statutory deadline. Section 70605(d) bars recovery. Therefore, I GRANT the government's motion and Count 3 of the Amended Complaint is DISMISSED without leave to amend.

**IT IS SO ORDERED.**

Dated: June 26, 2026

William H. Orrick
Senior United States District Judge